Sayre *v.* Hewes.

EDWARD SAYRE

*v.*

MARGARET V. HEWES and others.

1. Unless a chattel mortgage is filed in the county where the mortgagor resides at the time of its execution, or the mortgagee takes immediate possession of the mortgaged chattels, and continues in the actual and constant possession of them, the mortgage is absolutely void against the creditors of the mortgagor, and subsequent purchasers and mortgagees in good faith.

2. The statute concerning chattel mortgages makes an important distinction between creditors and subsequent purchasers or mortgagees. Purchasers or mortgagees, to avail themselves of a default on the part of a prior mortgagee, must take without notice of his rights, but a creditor is not affected by such notice.

3. A judgment on bond and warrant of attorney can only be entered for a debt actually existing at the time of its entry, and a simple liability as endorser or surety does not constitute such a debt.

4. A security for future advances is entitled to priority over subsequent encumbrances, only to the extent of the sums advanced prior to actual notice of the subsequent encumbrance.

5. Where a third encumbrancer acquires a right of priority over the first, but the act or omission from which such right flows does not change his relative position towards the second, yet, as it is impossible to put him in advance of the first, without advancing him, also, over the second, his lien must, of necessity, be advanced to the first position as against both the first and second encumbrances.

On final hearing on bill, answer and proofs.

*Mr. Joseph Coult,* for complainant.

*Mr. James W. Field,* for defendant Francis M. Hoag.

THE VICE-CHANCELLOR.

This is a strife for position. The facts material to the controversy are as follows : On the 3d of December, 1877, Mrs. Margaret V. Hewes executed a chattel mortgage on certain chattels, then being in a building in the city of Newark, to Francis M. Hoag, and the mortgage was, on the same day, filed in the office of the register of the county of Essex ; a second mortgage on the same chattels was executed by Mrs. Hewes to Frederick Fisher, February 14th, 1878, which was filed March 2d, 1878, in the office of the register of Hudson county ; a third mortgage was executed by Mrs. Hewes to the complainant (Edward Sayre), on the same chattels, February 25th, 1878, which was also filed in the office of the register of Hudson county on the day of its date ; on the 27th of February, 1878, the complainant recovered a judgment against Mrs. Hewes, by confession, in the Essex county circuit court, and another judgment was recovered against her, by confession, in the same court, by Albert H. Hewes, on the 2d of March, 1878. Executions were immediately issued upon these judgments, and levies made upon the chattels covered by the three mortgages. Albert H. Hewes assigned his judgment to the complainant immediately after its recovery. No consideration was paid for the assignment. The complainant and Frederick Fisher knew, when they received the mortgages made to them, that Mrs. Hewes had previously executed a mortgage to Mr. Hoag. They are subsequent mortgagees with notice of the antecedent mortgage.

Neither of the complainant's securities is founded on a debt actually existing at the time it was obtained. Both were given for the same purpose. The complainant had become surety for Mrs. Hewes, on a bond given by her to the ordinary, in 1874, on obtaining a letter of guardian-

ship for one of her children. The mortgage executed to him, and the judgment recovered by him, were intended, as he testifies, to secure him against loss in consequence of his contract of suretyship for her. Prior to getting these securities, he had paid nothing on account of that contract; he neither paid anything, nor expressly bound himself to stand as principal in that contract, at the time he obtained these securities, and he has paid nothing since, nor incurred any new or additional obligation. The mortgage and judgment were without other consideration than the complainant's contingent liability as such surety. No debt actually existed at the time they were obtained, and none has subsequently been created. In the papers, the complainant has styled himself trustee of Mrs. Hewes's ward, but his act, in this respect, as a matter of law, is a mere piece of assumption. As surety of the guardian, he had no authority to constitute himself trustee of her ward, and thus, in virtue of his own act, without paying anything, or binding himself to bear the whole burden of her obligation, put himself in a position where he is entitled to be recognized against other lien-holders, as a creditor invested with the rights of the ward. While Mrs. Hewes remained guardian, she was the sole representative of the ward, and her sureties had no right, in virtue of their liability for her, to assume the position of creditors against her in respect to her ward's estate.

The mortgages, it will be observed, were filed in different counties—those given to the complainant and Mr. Fisher having been filed in Hudson, and that given to Mr. Hoag, in Essex. The chattels mortgaged were, at the time the mortgages were executed, in the county of Essex. The residence of the mortgagor is in dispute; but the evidence, I think, leaves little ground for diversity of opinion as to where it must be adjudged to have been. The mortgagor's husband died in 1873. At the time of his death his residence was in Kearney township, Hudson county. The mortgagor, after his death, continued to occupy the house in which he had resided. She spent portions of each win-

ter thereafter, up to the winter of 1876 and 1877, in the city of Newark, sometimes taking a house, and at others three or four rooms, but keeping her dwelling in Kearney open, and she and her family going there whenever they chose. She continued to reside in her house in Kearney during the whole of the winter of 1877 and 1878, and on the day Mr. Hoag's mortgage was executed, she walked from her house in Kearney to Newark to execute it. If it be taken as true that, when she executed this mortgage, she declared Newark to be the place of her residence (the weight of the evidence does not, however, I think, establish the fact that such a declaration was made), still, I cannot see how this fact can affect the rights of the complainant. The question as to him is, not what did she say respecting the place of her residence, at the time she executed that mortgage, but where, in fact, did she then reside. His rights must be controlled by the fact, and not by her representation. The evidence shows, conclusively, that she resided in Hudson county when all three mortgages were executed.

It is clear, then, that Mr. Hoag's mortgage was not filed in the county where he was required by law to file it, in order to give it validity against the creditors of the mortgagor, and against subsequent purchasers and mortgagees in good faith. The law upon this point is plain and imperative. Unless a mortgage is filed in the county where the mortgagor resides (if a resident of this state) at the time of its execution, or the mortgagee takes immediate possession of the mortgaged chattels, and continues in the actual and constant possession of them, it is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith. *Rev. p. 709 §§ 39, 40; De Courcey v. Collins, 6 C. E. Gr. 357.*

The complainant is clothed with a dual character; he is both a creditor and a subsequent mortgagee. He is not, however, a subsequent mortgagee in good faith. He knew, when he took his mortgage, that a prior mortgage had been

given, and any attempt by him to dislodge that mortgage from its position of superiority, in consequence of the failure to file it in the proper county, is, in equity, an act of bad faith. His mortgage must therefore be awarded a position subordinate to that held by the mortgage to Mr. Hoag. He stands, however, as a judgment creditor, on a much higher plane. The statute makes an important distinction between creditors and subsequent purchasers or mortgagees. Purchasers or mortgagees, to be in a position to avail themselves of an omission by an antecedent mortgagee, must have acted without notice of the rights of the holder of the antecedent security; but not so with creditors. A creditor may know that an antecedent mortgage has been given, yet if it is not filed according to the requirement of the statute, and he obtains a judgment and procures a levy to be made, his lien, by force of the statute, is entitled to preference in payment. This is the rule plainly prescribed by the statute. Had the meaning of the statute ever been thought to be open to doubt, its construction is now so authoritatively settled as to be no longer open to discussion in this court. *Williamson* v. *N. J. Southern R. R. Co.*, *2 Stew. Eq. 336; S. C., 1 Stew. Eq. 278.*

To what extent, then, is the complainant a creditor? Is he entitled to that position in virtue of both of his judgments, or only one? The judgment he holds under assignment from Albert H. Hewes does not seem to be open to any valid objection. It was founded on a just debt, actually existing at the time it was confessed. The defendant Hoag cannot impeach the complainant's title because he paid nothing for it. The judgment creditor had an unquestionable right to assign it, with or without a consideration, just as he pleased. That is a matter which concerned him alone. The fact that the assignment was gratuitous, is only important as it may serve to show whether the foundation of the judgment was honest or fraudulent. Under the evidence, there can be no doubt that it is supported by a just debt.

Sayre *v.* Hewes.

As already intimated, the complainant's right to occupy the position of a judgment creditor, as against other lien-holders, under the judgment confessed to himself, has little to support it in a court of equity. Is he a creditor in the sense in which that term is used in this act? It is certain that no debt was due to him for which he could have maintained an action. At the time of his recovery, he had no legal or just cause of action against the defendant. At common law, a judgment may be confessed to secure a debt to be subsequently created, but suppose the consideration promised, is never furnished, would a court of equity permit the judgment to be collected, or give such a judgment creditor a superior position against an unfiled antecedent mortgage, the existence of which was known to him when he obtained his judgment?

Besides, I think I am bound to consider the doctrine as settled, so far at least as this court is concerned, that a judgment on bond and warrant of attorney, under our statute, can only be entered for a debt actually existing at the time of its entry, and that a simple liability as endorser or surety does not constitute such a debt. "It is an abuse of language to say," says Chancellor Halsted, "that because I endorse your note to-day, payable three months hence, to be used by you, you are indebted to me to-day for the amount of it." *Blackwell* v. *Rankin, 3 Hal. Ch. 160.* But the decisive authority on this point is the judgment of the court of errors and appeals, in *Clapp* v. *Ely, 3 Dutch. 555.* It will be remembered that, in that case, it was finally held, by a divided court, it is true, after repeated and exhaustive discussion by counsel as able as any that ever adorned the bar of this state, and after the best consideration that could be given by the court to any case, that a valid judgment could not be entered, under our statute regulating the recovery of judgments by confession on bond and warrant of attorney, to secure future advances, or a debt to be subsequently created. A single quotation from the masterly opinion of Chief Justice Green will pre-

sent the important ruling of that case, which, I think, must control this. He says: "Under the law of this state, no judgment by confession can be entered, except for a demand founded on a legal consideration, and for a debt justly due and owing at the time of the entry of the judgment." These considerations, I think, effectually dispose of the complainant's claim to be regarded as a judgment creditor, as against the other lien-holders, in respect to the judgment confessed to himself.

But if it were possible to hold that the complainant was entitled to be treated as the holder of a valid security for future advances, it is not perceived how that would give him the least advantage in this controversy. The general rule in respect to such securities is well established. They are only entitled to priority over subsequent encumbrances to the extent of the sums actually advanced prior to actual notice of the subsequent encumbrance. *Ward* v. *Cook, 2 C. E. Gr. 93; Kline* v. *McGuckin, 9 C. E. Gr. 411.* Here nothing, up to this time, has been advanced, and the complainant cannot, therefore, in equity, lay claim to the rights of a creditor.

This disposes of the case so far as it involves merely the rights of the complainant and Mr. Hoag, and without reference to the rights of Mr. Fisher. But his rights must also be considered. He took his mortgage with notice that a prior mortgage had been given to Mr. Hoag, and he must, therefore, as between Hoag and himself, take the subordinate position. But he and complainant, as between themselves, occupy equal rank; the judgment of the one, and the mortgage of the other, were recovered and filed on the same day. So that the relative positions of the several parties are as follows: The complainant and Fisher, as between themselves, hold concurrent liens, but Hoag stands prior to Fisher as between Fisher and himself, and the complainant, as between Hoag and himself, stands prior to Hoag. In this condition of affairs, it is impossible to give the complainant the full benefit of the superiority of his

position over Hoag, without advancing him to the front against everybody. / The fact that the complainant's position is superior to that of Hoag, and that Fisher's is subordinate to that held by Hoag, raises the complainant above Fisher as well as Hoag. Where a third encumbrancer acquires a right of priority as against the first, but the act or omission from which such right flows does not change his relative position towards the second, yet, as it is impossible to put him in advance of the first, without also advancing him over the second, his lien must, of necessity, be advanced to the first position as against both the first and the second encumbrances. *Clement* v. *Kaighn, 2 McCart. 47.*

The decree will declare the liens of the parties to stand in the following order: The complainant shall be first paid the amount due on the judgment assigned to him by Albert H. Hewes; the defendant Hoag shall next be paid the amount due on his mortgage, and, lastly, Fisher shall be paid the amount due on his mortgage. If a surplus remains, it must be brought into court to await the determination of the question whether the complainant or Mrs. Hewes is entitled to it.